UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AZUCENA ORTIZ and DOMINGA ESPINOZA, *on behalf of themselves, and those similarly situated and the State of California*,

Plaintiffs,

v.

LUCERO AG SERVICES, INC., *et al.*,

Defendants.

Case No. 1:23-cv-01319-JLT-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFFS' MOTION FOR CLASS CERTIFICATION BE GRANTED

(ECF No. 126)

OBJECTIONS, IF ANY, DUE IN 30 DAYS

Plaintiffs Azucena Ortiz ("Ortiz") and Dominga Espinoza ("Espinoza") seek class certification in this action brought pursuant to the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and California law. (ECF No. 126). Defendant Paragroup Farms, Inc. ("Paragroup") has filed an opposition to Plaintiffs' motion, (ECF No. 129), and Plaintiffs have filed a reply, (ECF No. 130).[1]

For the following reasons, the Court will recommend that Plaintiffs' motion for class certification be granted.

## I. PROCEDURAL BACKGROUND

On September 5, 2023, Plaintiffs Ortiz, Espinoza, and Gustavo Meza ("Meza"),[2] initiated this action by filing a class action complaint in this Court. (ECF No. 1). They amended their

[1] This matter was referred to the undersigned pursuant to 28 US.C. § 636 and Local Rule 302.
[2] Meza was subsequently dismissed from this action. *See* (ECF Nos. 115, 117, 119, & 125).

complaint on August 14, 2024, asserting claims against Defendants Lucero Ag Services, Inc. ("Lucero Ag"), 559 Ag Corp. ("559 Ag"), Paragroup, Ricardo Ulices Lucero-Ambrosio ("Lucero-Ambrosio"), Artemio Fidel Salazar Luna ("Luna"), and DOES 1-50. (ECF No. 45). Default has been entered against Defendants Lucero Ag, 558 Ag, Lucero-Ambrosio, and Luna, collectively referred to as the farm labor contractor ("FLC") Defendants. *See* (ECF Nos. 20, 78, 81, 82, 103, 104, 105, 108, 112, & 113).

On June 26, 2026, Plaintiffs filed a motion for class certification. (ECF No. 126). Paragroup filed an opposition to Plaintiffs' class certification motion on July 13, 2026. (ECF No. 129). On July 20, 2026, Plaintiffs filed a reply to Paragroup's opposition. (ECF No. 130).

The Court held a hearing on the motion for class certification on September 11, 2026. (ECF No. 133).

## II. PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs' amended complaint alleges that Defendants failed to pay seasonal, non-exempt agricultural workers all wages owed to them. (ECF No. 45 at 2). Specifically, Plaintiffs contend that Defendants provided false and misleading information regarding the terms and conditions of employment; failed to provide rest or meal periods or pay additional wages in lieu thereof; failed to pay minimum wages, overtime wages, or waiting time wages; failed to provide itemized employee wage statements; and failed to indemnify employees for necessary business expenditures or losses incurred, in violation of the AWPA, California labor law, and California unfair competition law. (*Id.* at 15-31). Plaintiffs also seek to recover civil penalties under California's Private Attorney General Act. (*Id.* at 31-34).

## III. MOTION FOR CLASS CERTIFICATION

### A. Plaintiffs' Motion

Plaintiffs seek certification of the following proposed classes:

- **Global Class**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2019 to the present.
- **Unpaid Piece-Rate Rest Period Subclass**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at

Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who worked at least one shift of 3 1/2 hours or greater and were not paid for rest periods.

- **Unpaid Nonproductive Work Time Subclass**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not compensated separately for nonproductive work time.
- **Minimum Wage Subclass**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not paid at least the minimum wage for their hours worked.
- **Final Wages Subclass**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not paid all wages due when they were laid off, discharged or quit as required by the California Labor Code.
- **Violation of Unfair Competition Law Subclass**: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2019 to the present who, due to the violations alleged in the subclasses, were subject to unlawful or unfair business acts or practices.

(ECF No. 126 at 2-3).

Plaintiffs argue that the proposed classes satisfy the requirements of Rule 23. (*Id.* at 13-22). First, Plaintiffs argue that the proposed classes are sufficiently numerous, and that numerosity is confirmed by time records, checks, invoices, and worker declarations. (*Id.* at 14-16). Second, Plaintiffs argue that common questions of law and fact predominate over questions affecting individual members, since the FLC Defendants' failure to pay its blueberry pickers for their rest break time, nonproductive work time, minimum wage, and all wages at separation is

common to the proposed class and well suited for class treatment. (*Id.* at 16-19). Third, Plaintiffs argue that their claims are typical of the claims of the class, since they suffered the same rest break pay, nonproductive time pay, minimum wage, and final wages violations as the class and subclasses they seek to represent. (*Id.* at 19-20). Fourth, Plaintiffs argue that they will fairly and adequately protect the interests of the class, because they have no conflicts of interest with the class they seek to represent and are "dedicated to representing their colleagues for the violations they experienced at the hands of the FLC Defendants at Paragroup's facilities[.]" (*Id.* at 20-21). Fifth, Plaintiffs argue that proposed class counsel is adequate to represent the class, since counsel is experienced in representative employment law claims and has worked extensively in this matter. (*Id.* at 21). Sixth, Plaintiffs argue that they meet the requirements of Rule 23(b)(3), since questions of law or fact common to the members of the class predominate and this case presents no manageability difficulties that would preclude class certification. (*Id.* at 21-22).

**B. Paragroup's Opposition**

Paragroup's opposition argues that this case is unsuitable for class-wide adjudication because Plaintiffs cannot satisfy Rule 23. (ECF No. 129 at 14-30). First, Paragroup argues that commonality fails because individual questions predominate over common proof, Plaintiffs identify no common policy attributable to Paragroup nor documentary evidence subject to common proof, and the declarations that Plaintiffs rely on "only deepen the variation and fail to identify any uniform Paragroup policy[.]" (*Id.* at 14-18, 23-28). Second, Paragroup argues that Plaintiffs cannot establish typicality because they are subject to defenses unique to the named plaintiffs and materially different work experiences. (*Id.* at 19-22). Third, Paragroup argues that Plaintiffs cannot adequately represent the proposed class due to lack of knowledge, participation, and alignment of interests. (*Id.* at 22-23). Fourth, Paragroup argues that Plaintiffs cannot establish numerosity or ascertainability within common proof. (*Id.* at 28-29). Finally, Paragroup argues that Plaintiffs' expert declaration does not supply reliable common proof of liability and damages. (*Id.* at 29-30).

Paragroup also argues that it cannot be liable as a client-employer, and Plaintiffs lack standing to bring their claims. (*Id.* at 8-14).

### C. Plaintiffs' Reply

Plaintiffs argue that Paragroup has provided no reason to deny certification of the proposed class and subclasses and has not rebutted their *prima facie* showing of numerosity, common questions of law and fact, and the adequacy and typicality of the proposed class representatives. (ECF No. 130 at 3-11). Plaintiffs argue that Paragroup "does [not] rebut, and effectively does not address, Plaintiffs' five proposed subclasses." (*Id.* at 2) (footnote omitted). Plaintiffs argue that Paragroup cannot use the absence of employer records to challenge certification or as a shield from liability. (*Id.* at 3-4). Finally, Plaintiffs argue that Paragroup's claim that it is not a client employer does not defeat certification and fails based on conceded facts. (*Id.* at 9-10).

## IV. LEGAL STANDARDS

### A. Class Actions Generally

For class certification, the proposed class must satisfy the four threshold requirements of Federal Rule of Civil Procedure 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). The goal of Rule 23(a) is to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (citation and internal marks omitted).

In addition to the requirements of Rule 23(a), "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Pursuant to Rule 23(b)(3), a court may certify a class only if it determines that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with

[Rule 23].” *Dukes*, 564 U.S. at 350. Further, “[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23].” Fed R. Civ. P. 23(c)(5); *see also Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (“This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.”).

The Supreme Court has recognized that “‘sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.’” *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Rule 23(b)(3) only “requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.” *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (footnote omitted) (“[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence.”). However, “a district court *must* consider the merits if they overlap with the Rule 23(a) requirements.” *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted).

**B. Rule 23(a) Requirements**

**1. Numerosity**

A proposed class must be “so numerous that joinder of all members is impracticable.” Fed. R. Civ. P. 23(a)(1). “The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.” *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm’n*, 446 U.S. 318, 330 (1980) (footnote omitted) (noting that a class with only 15 members “would be too small to meet the numerosity requirement”). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (*citing Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810, 103 (1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement)).

\\\

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require class members to "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Olean*, 31 F.4th at 663 (*citing Tyson Foods*, 577 U.S. at 453). "Commonality is necessarily established where there is a class-wide policy to which all class members are subjected." *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022) (*citing Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014)). Further, "[e]ven a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) (*citing Dukes*, 564 U.S. at 350). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.*

**3. Typicality**

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020 (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal marks omitted), *superseded by statute on other grounds as stated in Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-cv-00496-ACK-KJM, 2021 WL 3611027, at *6 (D. Haw. Aug. 13, 2021).

**4. Adequacy of Representation**

Before the Court can certify a class, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (alteration in original) (footnote and citation omitted). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citation omitted), *as amended* (June 19, 2000).

**C. Rule 23(b) Requirements**

Plaintiffs seek certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (internal marks omitted) (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* As set forth by the Supreme Court,

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-

> defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (citations and internal marks omitted).

#### 2. Superiority

Rule 23(b)(3) provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citation and internal marks omitted) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 663 (7th Cir. 2015)), *abrogated on other grounds by TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

## V. CLASS CERTIFICATION ANALYSIS

### A. Rule 23(a) Requirements

#### 1. Numerosity

Plaintiffs argue that they satisfy Rule 23(a)'s numerosity requirement because time records provided to Paragroup by 559 Ag identify 174 different workers, and an additional 4,733 workers are identified by the checks paid to workers from the FLC Defendants. (ECF No. 126 at 14). Further, Plaintiffs and putative class members all observed large numbers of workers subjected to the same conditions they experienced, as reflected in the worker declarations. (*Id.* at 15-16).

With respect to the subclasses, Plaintiffs argue that based on the unanimous testimony of the declarants, every one of the 174 workers identified in the time records provided to Paragroup by 559 Ag were not paid for rest break time. (*Id.* at 14-15). Similarly, each worked nonproductive time, and no records show that any of them were paid for such time. (*Id.*). Plaintiffs also argue that Paragroup's records show 70 workers did not pick enough to earn the minimum wage. (*Id.* at 15) (citation omitted).

Paragroup argues that Plaintiffs attempt to inflate numerosity through their expert by "aggregating mixed records from Paragroup time sheets, checks from FCL Defendants regardless of whether they correspond with Paragroup, worker lists, invoices, and bank documents." (ECF No. 129 at 28). Paragroup also points to the declarations of putative class members that reflect work performed at Paragroup and non-Paragroup locations. (*Id.* at 29).

First, on this issue as well as other issues to be discussed later, there is an issue regarding the lack of available records to support Plaintiffs' claims. Specifically, Plaintiffs contend that Paragroup has not produced documents it was required to maintain under Labor Code § 1695.55, and in fact, has admitted that it did not retain such records. (ECF No. 126 at 15 n.1; ECF No. 130 at 3). Plaintiffs assert that Paragroup is attempting to shield itself from liability, and defeat certification, through its own and the FLC Defendants' failures to keep adequate records, but "public policy militates against making the burden of proving uncompensated work an impossible hurdle for the employee." (ECF No. 130 at 2-4) (alteration and internal marks omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016)). They contend that "[a] representative sample is appropriate 'to fill an evidentiary gap created by the employer's failure to keep adequate records,'" and they have presented common evidence for two representative samples: declarations from workers and a supervisor, and time records and invoices prepared by the FLC Defendants. (*Id.*) (quoting *Tyson Foods, Inc.*, 577 U.S. at 456-57). Plaintiffs argue that damages calculations are feasible even if further discovery does not yield more fulsome documentation, and the Court may elect to apply one of the methods of apportionment among client employers set forth in § 13832. (*Id.* at 4).

Section 1695.55 of the Labor Code requires FLC's to "provide any grower with whom he or she has contracted to supply farmworkers a payroll record for each farmworker providing labor

under the contract," and each grower entering into a contract with an FLC to retain a copy of such record. Cal. Lab. Code § 1695.55(a)-(b).

In its opposition, Paragroup acknowledges the lack of documentary evidence in this case. (ECF No. 129 at 24-25). It asserts that because there is no reliable evidence to determine the amount of hours worked by an individual and on any specific date, since there are no timecards, schedules, or other documentation, it is "impossible to assess wage and hour violations based solely on declarations prepared by attorneys and signed off by interested parties with no supporting credible evidence to support their claims." (*Id.* at 24). Paragroup contends that *Wilson v. The La Jolla Grp.*, 61 Cal.App.5th 897 (2021) directly addresses this scenario, "holding that while 'the lack of time records does not preclude certification' as an absolute rule, plaintiffs 'must still come forward with some evidence tending to show uncompensated work.'" (*Id.* at 25).

The Court has reviewed the cases cited by Plaintiffs and Paragroup and agrees that in the absence of records, Plaintiffs are required to come forward with some evidence to support their claims for uncompensated work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (explaining that where the employer's records are inaccurate or inadequate the solution is "not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work" and finding "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"), *superseded by statute on other grounds by* 29 U.S.C. § 254(a); *Tyson Foods*, 577 U.S. at 454-57 (citations omitted) (explaining that a "representative or statistical sample, like all evidence, is a means to establish or defend against liability" and its "permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action" and allowing a representative sample to fill an evidentiary gap in the case); *Wilson*, 61 Cal.App.5th at 916 n.5 (citation omitted) (explaining that lack of time records does not preclude certification, but plaintiffs must still come forward with some evidence tending to show uncompensated work); *see also Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI–

JLT, 2014 WL 321159, at *7 (E.D. Cal. Jan. 28, 2014) (explaining that the fact that neither the FLC nor the farm defendant maintained the required records under California Labor Code § 1695.55 could be used to preclude the class claims asserted in the case), adopted by 2014 WL 631586, at *1 (E.D. Cal. Feb. 18, 2014). For the reasons discussed below, Plaintiffs have satisfied this burden.

Next, although the Court agrees with Paragroup that the 4,733 number from the checks issued by the FLC Defendants is inflated as it includes individuals that performed work at non-Paragroup locations, the time records provided to Paragroup identify 174 individuals who performed piece-rate work at Paragroup during the relevant timeframe. (ECF No. 126-3); *see also* (ECF No. 126-2 at 13-14). This figure is sufficiently numerous that joinder of all class members is impracticable. Similarly, the invoices from 559 Ag to Paragroup indicate crews of workers ranging from 41 to 151 who performed piece-rate work at Paragroup during the relevant timeframe, (ECF No. 126-4), which are also sufficiently numerous figures.

Moreover, Plaintiffs and putative class members Fernando Angeles, Silverio Lopez, and Ricardo Bautista each provided declarations in which they estimated at least 100 workers picked blueberries on a piece-rate basis at a Paragroup location during the relevant timeframe. (ECF No. 126-6 at 1-4, 12-15, 21-24, 34-36, 57-61). These declarants attested that they were paid on a piece-rate basis with no minimum wage guarantee; were not scheduled for, and did not take, a 30-minute meal period; were not paid for, or told to take, any rest breaks; and spent time performing work for which they were not paid, including daily training, collecting buckets, walking to their rows, and waiting for their buckets to be weighed. (*Id.*). This figure is also sufficiently numerous that joinder of all class members is impracticable. Accordingly, the Court finds that this requirement has been met.

**2. Commonality**

Plaintiffs argue that the FLC Defendants' failure to pay its blueberry pickers for their rest break time and nonproductive work time is common to the proposed class and well suited for class treatment. (ECF No. 126 at 17-18). They assert that the worker declarations establish that the FLC Defendants did not pay workers for their rest periods, time data produced by Paragroup for a week in 2022 shows that workers picked on shifts of at least six hours and were entitled to a

rest break, and no evidence establishes that the workers were paid for their rest break time. (*Id.* at 17). They contend that a reasonable estimate of nonproductive work time was required of the FLC Defendants for blueberry harvesters, and given their failure to pay them for nonproductive time based on such an estimate, class evidence establishing a reasonable estimate is adequate class-wide proof. (*Id.* at 18) (citation omitted).

Plaintiffs also argue that common questions of law and fact predominate with respect to their claims that the FLC Defendants failed to pay at least the minimum wage and did not pay all wages due upon separation from employment. (*Id.* at 18-19). They assert that the time records and invoices Paragroup has produced show that workers routinely did not pick enough berries to earn the minimum wage, and Plaintiffs and other declarants report that they were paid only for the buckets of blueberries they picked, they did not pick enough to make minimum wage, and they were not paid minimum wage for their time. (*Id.* at 18) (citations omitted). They contend that in addition to wages owed due to the violations defining the classes above, many workers were also not paid all wages owed at separation from employment because the FLC Defendants' checks bounced. (*Id.* at 19).

In their amended complaint, Plaintiffs list the common questions of law and fact as including:

a. Whether Defendants violated §§ 17200 et seq. of the Business and Professions Code by the violation of California labor laws;

b. Whether Defendants violated the California Labor Code and Wage Orders as a result of the allegations described in this complaint;

c. Whether Defendants violated the California Labor Code and Wage Orders by compensating Plaintiffs and other Class Members at hourly wage rates below (1) the minimum wage rate and (2) double minimum wage rate;

d. Whether Defendants violated the California Labor Code and Wage Orders by compensating Plaintiffs and other Class Members at rates below the required overtime rate;

e. Whether Defendants violated the California Labor Code and Wage Orders by failing to provide lawful meal periods or discouraging Plaintiffs and Class Members from

taking them, and failing to pay premium wages in lieu thereof, in violation of California law;

f. Whether Defendants violated the California Labor Code and Wage Orders by failing to, among other things, maintain accurate records of Plaintiffs and other Class Members' earned wages, work periods, hours worked and wages earned;

g. Whether Defendants violated the California Labor Code and Wage Orders by failing to pay all earned wages due and/or premium wages due and owing at the time that the employment of any Class Members, including Plaintiffs, ended;

h. Whether Defendants violated the California Labor Code and Wage Orders by failing to, indemnify Plaintiffs and other Class Members for all necessary business expenditures, including glove expenses; and

i. Whether Plaintiffs and other Class Members are entitled to restitution, wages, statutory penalties, premium wages, declaratory, injunctive and declaratory relief, attorneys' fees, interest, and costs, and other relief pursuant to California Labor Code and Wage Orders, Business and Professions Code §§17200 et seq.

(ECF No. 45 at 13-14).

Paragroup argues that commonality fails because Plaintiffs' own testimony fails to identify any uniform Paragroup policy governing schedules, breaks, wages, timekeeping, reimbursement, or working conditions or to connect any of the challenges practices to Paragroup and instead "reflects only low-level communications and individualized worker claims, not a common contention capable of generating a common answer[.]" (ECF No. 129 at 15).

In their reply, Plaintiffs argue that Paragroup asks this Court to ignore the facts common to all nine worker declarations and the declaration of a supervisor, as well as common documentary proof. (ECF No. 130 at 4). Specifically, they point to worker and supervisor declarations, invoices 559 Ag provided to Paragroup, crew sheets, and Paragroup's contract with 559 Ag to support their argument that the FLC Defendants' failure to pay workers for rest breaks, unproductive work time, minimum wage, and final wages is shown through common evidence and damages can be feasibly and manageably calculated. (*Id.* at 5-8). Plaintiffs argue that Paragroup conflates liability and damages, since differences among class members go to

damages, not class certification. (*Id.* at 4, 7).

Contrary to Paragroup's contentions, Plaintiffs' evidence indicates that Defendants had at least a regular practice of paying workers solely for the amount of blueberries they picked at Paragroup locations without compensating for meal or rest breaks or unproductive time. Plaintiffs have submitted declarations from putative class members that indicate they were paid on a piece-rate basis with no minimum wage guarantee; were not scheduled for, and did not take, a 30-minute meal period; were told not to take any rest breaks; received daily training; and spent time collecting buckets, walking to their rows, waiting to start picking, walking to the scale, and waiting for their buckets to be weighed, but were told they would only be paid based on the buckets of blueberries they picked. (ECF No. 126-6 at 1-4, 12-15). Crew sheets and invoices to Paragroup also reflect work performed on a piece-rate basis. *See* (ECF No. 126-3 at 1-15; ECF No. 126-4 at 1-35).

Paragroup does not offer any evidence to dispute that these practices were in place during the relevant period. Although Paragroup points to allegedly conflicting testimony regarding the availability of breaks, it does not address whether the workers were provided compensation for breaks not taken. Paragroup attempts to defeat commonality by pointing to variations in the worker declarations, including different years worked, different hours, different foremen, and different locations, but it has not presented evidence that those differences matter with respect to the alleged violations. The fact that certain workers also worked at non-Paragroup locations while Plaintiffs only worked at Paragroup locations does not defeat commonality because the proposed class definitions are limited to work performed at Paragroup locations.

Because Plaintiffs have provided evidence that workers were subject to the same working conditions at Paragroup locations in terms of compensation for certain wages in addition to those paid on a piece-rate basis, the Court finds that the question of Defendants' liability, including whether Defendants' practice of not paying workers for rest breaks, nonproductive time, or minimum wage violated state labor laws, presents a common issue capable of class-wide resolution.

Accordingly, the Court concludes that commonality has been established for the proposed classes.

**3. Typicality**

Plaintiffs argue that their claims are reasonably coextensive with those of the class members, since they suffered the same rest break pay, nonproductive time pay, minimum wage, and final wage violations as the class and subclasses they seek to represent. (ECF No. 126 at 20). Both harvested berries at Paragroup's Visalia field, were told they would be paid only based on the buckets they picked, were not paid for rest breaks, were not paid for nonproductive work time, were unable to earn the minimum wage based on their picking, and were owed wages when they stopped working for the FLC Defendants. (*Id.*).

Paragroup argues Plaintiffs are subject to factual and credibility defenses that are unique to the named plaintiffs and are not shared by absent class members. (ECF No. 129 at 19). Specifically, Paragroup argues that Plaintiffs have provided materially inconsistent sworn testimony concerning core facts underlying their claims, and because Paragroup will have to devote substantial effort into impeaching the named Plaintiffs and litigating defenses unique to them, Rule 23(a)'s typicality requirement is not satisfied. (*Id.* at 19-20). Paragroup argues that Plaintiffs lack experience that is typical of those within the putative class, such as different purported work practices including breaks, hours worked, and different foreman giving daily instructions, and many of the claims of the proposed class will be focused on the liability of different landowners. (*Id.* at 21). Paragroup argues that typicality is not satisfied because the record demonstrates material differences regarding the location, supervisors, instructions received, days and hours worked. (*Id.* at 22).

In their reply, Plaintiffs argue that Paragroup presents no evidence that Plaintiffs' testimony is not credible beyond vague complaints that the declarations are similar and were drafted with the assistance of counsel. (ECF No. 130 at 10) (citation omitted). They argue that their claims are typical of the classes they seek to represent, since they were not paid for their rest breaks, for their unproductive work time, minimum wages, or all of their wages at the termination of their employment, "all of which are unfair trade practices." (*Id.*).

As the Ninth Circuit has explained, "[t]he test for typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995) (citing *Hanon*, 976 F.2d at

508). The claims of the proposed classes stem from Defendants' alleged failure to pay certain wages apart from wages paid on a piece-rate basis, and Plaintiffs have offered evidence reflecting the existence of this practice at Paragroup locations. In particular, Plaintiffs' and putative class members Fernando Angeles, Silverio Lopez, and Ricardo Bautista's declarations attest to these practices at Paragroup locations, and crew sheets and invoices to Paragroup reflect work performed on a piece-rate basis. *See* (ECF No. 126-3 at 1-15; ECF No. 126-6 at 1-4, 12-15, 21-24, 34-36, 57-61; ECF No. 126-4 at 1-35).

Moreover, as discussed above, although Paragroup contends that Plaintiffs and putative class members were subject to different hours worked, different foreman, or different locations, it has not presented evidence that those differences matter with respect to the alleged violations. The fact that certain workers also worked at non-Paragroup locations while Plaintiffs only worked at Paragroup locations is not relevant to typicality because the proposed class definitions are limited to work performed at Paragroup locations.

Accordingly, the Court concludes Plaintiffs' claims are typical of those of the proposed classes.

**4. Adequacy of Representation**

Plaintiffs argue that they are appropriate class representatives because they have no conflicts of interest with the class they seek to represent, their interests in recovering for the violations align directly with the interests of the class, and they understand and are prepared to carry out their responsibilities as class representatives. (ECF No. 126 at 20-21). They also argue that proposed class counsel is adequate to represent the class because class counsel's practice is focused almost exclusively on representative employment law claims and based on the work performed in this matter. (*Id.* at 21).

Paragroup argues that Plaintiffs were not employed during the majority of the proposed class period, which defeats adequacy because they lack the same incentive to vigorously litigate claims arising from those earlier or later years as workers who were actually employed during those periods. (ECF No. 129 at 22) (citation omitted). Paragroup contend that Plaintiffs cannot adequately represent the proposed class because their testimony shows that they lack both meaningful participation in this case and a basic understanding of the claims they seek to

prosecute on behalf of absent workers. (*Id.*). Paragroup also asserts that Plaintiffs cannot identify the defendant they seek to sue, the owner of the worksite, or the entity allegedly responsible for the challenges practices, all of which are central to liability in this case. (*Id.* at 23).

In their reply, Plaintiffs argue that Paragroup attempts to disqualify Plaintiffs as class representatives by "imposing invented requirements about how much these Spanish-speaking agricultural workers must understand about civil litigation," but "[d]isqualifying proposed class representatives on such grounds would effectively bar the courthouse door to the vast majority of people who might bring a class action." (ECF No. 130 at 10-11). Further, they argue that plaintiffs in class actions routinely represent class members affected before or after their own injury, which is the "value of the class action: it permits redress to a large group of people who experienced the same violation." (*Id.* at 11).

The Court is satisfied that Plaintiffs are adequate representatives for the proposed classes. First, Plaintiffs have represented that they do not have any conflicts of interest in pursuing this litigation. (ECF No. 126 at 20). Plaintiffs have also indicated that they understand and are prepared to carry out their responsibilities as class representatives. (*Id.* at 21). Although Paragroup claims that Plaintiffs lack the same incentive to litigate claims arising from the majority of the proposed class period since they were only employed in 2022, Plaintiffs have been actively litigating this case for over three years, and Paragroup provides no support for its suggestion that Plaintiffs were required to work for the entire class period in order to be adequate representatives.

Additionally, contrary to Paragroup's contention, Plaintiffs' declarations reflect a basic understanding of the claims they seek to prosecute on behalf of the proposed classes, as they describe what they and other workers experienced while harvesting blueberries at a Paragroup location. For example, they explain that the workers were paid on a piece-rate basis with no minimum wage guarantee; were not scheduled for, and did not take, a 30-minute meal period; were told not to take any rest breaks; received daily training; and spent time collecting buckets, walking to their rows, waiting to start picking, walking to the scale, and waiting for their buckets to be weighed, but were told they would only be paid based on the buckets of blueberries they picked. (ECF No. 126-6 at 1-4, 12-15).

Similarly, the Court is satisfied that Plaintiffs' counsel is adequate to represent the proposed classes. Paragroup does not challenge the adequacy of Plaintiffs' counsel, *see* (ECF No. 129), and the declaration provided by attorney Stan Mallison reflects that the named counsel are experienced and able to effectively represent the proposed classes, *see* (ECF No. 126-1).

Accordingly, the Court finds that Plaintiffs and Plaintiffs' counsel are adequate representatives for the proposed classes.

**B. Rule 23(b) Requirements**

**1. Predominance**

Plaintiffs argue that, for the reasons discussed above, questions of law or fact common to the members of the class predominate over any questions affecting only individual members. (ECF No. 126 at 22).

Paragroup argues that Plaintiffs' testimony confirms that liability would turn on worker-specific questions that cannot be resolved through common proof. (ECF No. 129 at 23-24). Paragroup contends that the threshold question of who employed each worker and who controlled the challenged practices is individualized. (*Id.* at 24).

As discussed above, the claims of the proposed class members all depend on common questions—whether Defendants failed to pay workers for rest breaks or nonproductive time, or enough to make minimum wage. The class definitions are limited to workers employed by Lucero Ag or 559 Ag and to those workers who picked blueberries at Paragroup locations on a piece-rate basis, so Paragroup's argument in this regard is without merit.

As a uniform policy was applied to all members of the proposed classes, the classes are sufficiently cohesive, even if an individual member's damages will vary depending on the amount of premium pay they are owed.

Accordingly, the Court finds that predominance has been established for the proposed classes.

**2. Superiority**

Plaintiffs argue that this case presents no manageability difficulties that would preclude class certification and will be easily manageable at trial. (ECF No. 126 at 22). They assert that liability for unpaid minimum wages and final wages will be shown through Paragroup's business

records, the FLC Defendants' bank accounts, and worker testimony, and claims not proven through business records are all susceptible to common proof through representative testimony of workers who worked in teams completing repetitive tasks, and who were all paid in the same way. (*Id.*).

Paragroup presents no arguments against a finding of superiority with respect to any class. *See* (ECF No. 129).

The Court finds that a class action is the superior method for fairly and efficiently adjudicating the claims of Plaintiffs and the proposed classes.

Accordingly, the Court finds that Plaintiffs have met their burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to each class. Therefore, the Court recommends that the classes be certified.

## VI. CONCLUSION AND RECOMMENDATIONS

Based on the forgoing, IT IS RECOMMENDED that:

1. Plaintiffs' motion for class certification, (ECF No. 126), be granted, and that the Court certify the following classes pursuant to Rule 23(b)(3):

   a. Global Class: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2019 to the present.

   b. Unpaid Piece-Rate Rest Period Subclass: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who worked at least one shift of 3 1/2 hours or greater and were not paid for rest periods.

   c. Unpaid Nonproductive Work Time Subclass: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not compensated separately for nonproductive work time.

d. Minimum Wage Subclass: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not paid at least the minimum wage for their hours worked.

e. Final Wages Subclass: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2020 to the present who were not paid all wages due when they were laid off, discharged or quit as required by the California Labor Code.

f. Violation of Unfair Competition Law Subclass: All non-exempt agricultural employees employed by farm labor contractor 559 Ag or Lucero Ag Services at Paragroup Farms to harvest blueberries on a piece-rate basis from September 5, 2019 to the present who, due to the violations alleged in the subclasses, were subject to unlawful or unfair business acts or practices.

2. Paragroup's objections, (ECF No. 129), be overruled.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

\\\

\\\

\\\

\\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 20, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE